## Eureka Coal & Mineral Co., Southwestern Petroleum Co. and R. Hochstetter v. Johnson.

(Decided December 2, 1919.)

### Appeal from Lee Circuit Court.

1. Trespass—Action Against Intruder—Right of Action Based on Possession—Possession in plaintiff is sufficient to maintain an action of trespass against one who hath no title.

2. Trespass—Action Against Intruder—Sufficiency of Possession. —Actual possession at the time of the trespass is necessary to enable a plaintiff without title to recover against a trespasser, and manifestly where the land is not enclosed or embraced within a well marked boundary, mere claim of ownership with occasional cutting and removing of timber from parts of the land not occupied by the defendant is not sufficient

E. C. O'REAR, J. C. JONES, SAM HURST, G. W. GOURLEY and WORTHINGTON, COCHRAN & BROWNING for appellants.

BLAKEY, QUIN & LEWIS, J. M. McDANIEL and T. B. BLAKEY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Alleging that she was the owner and in possession of a certain described tract of land situated in Lee county, and that the defendants, Eureka Coal & Mineral Company, Southwestern Petroleum Company and Ralph Hochstetter, had, at various times, wrongfully and forcibly and without the consent of plaintiff entered upon said land and committed numerous trespasses, plaintiff, Esther Johnson, brought this suit to recover damages in the sum of $600.00 and for all proper relief. The defendants denied that plaintiff was, or had ever been, the owner, or in possession, of the tract of land described in

the petition, or that they on the dates mentioned in the petition had wrongfully or forcibly or without the consent of plaintiff entered thereon and committed the various trespasses, and then pleaded that they were the owners of all the coal, gas, oil and other minerals in the land in question, together with the usual privileges accompanying such ownership. The jury were instructed in substance that if they believed from the evidence that the plaintiff was put in possession of the land in controversy by M. H. Courtney, then the burden was on the defendants to prove title superior to plaintiff and that if they believed from the evidence that the defendants had not shown title superior to that of plaintiff, then the law was for the plaintiff and the jury should so find, etc. The jury returned the following verdict: "We, the jury, agree and find for the plaintiff the sum of two hundred ($200.00) dollars." Thereupon, the court adjudged that plaintiff should recover the sum of $200.00, with interest and costs, and further adjudged that plaintiff was the owner of the land in controversy. The defendants appeal.

For plaintiff, her husband, Samuel Johnson, testified as follows: He was his wife's agent in regard to the land in controversy. His wife was in possession of the land. His acts of possession were cutting logs and hauling them away, lumbering and cutting posts and work such as that, all of which was done openly. The land adjoined the land where he and his wife lived, but there was a fence between the two tracts. Every year they cut timber off it and put it down where they lived. The land in controversy was not fenced or enclosed, nor had he and his wife cultivated any portion of it. The land was in the woods. They had no possession of it except the making of logs and the cutting and making of board timber. M. H. Courtney put them in possession of it. He could not say that he cut and hauled logs from the acre and a half occupied by the defendants. Witness was recalled and produced a cancelled check for $10.00 executed by him to M. H. Courtney "for lands" and endorsed by M. H. Courtney and C. C. Courtney. He stated that the check was given as the first payment for the land in controversy. The next payment was to be made the following May and Courtney was to send him the deed for examination. When Courtney was at the house the preceding fall

he had a list of the calls, told him where the land was and showed him how it ran. Courtney then got the date of the check and said that he was going to send back the deed but never sent it. Courtney first offered him the land for $2.75 an acre and the timber for $1.25 an acre or $4.00 straight for the land and timber, and he told Courtney that he would take it straight. The land which Courtney showed him "ran on top of the cliff, around to Spencer's line and with Spencer's line to another hill, and taking this boundary in and the cliffs. They was some places down behind the cliffs." Jim Stewart testified that he passed the land as much as twice a day, or at least nearly every day, and had seen Samuel Johnson cutting and hauling logs off of it. He had not seen Johnson doing any work on that part of the land used by the defendants. He did not know whether the land was fenced. Sim Spencer testified that he lived on Caves fork. He was acquainted with the boundary of land in controversy, and knew Samuel Johnson and his wife. He bought some timber from Johnson that came off the land. He had helped Johnson haul the timber off. The land was not fenced. Charles McIntosh, plaintiff's son-in-law, testified that he had worked on the land claimed by plaintiff and was present at Johnson's house when the trade was made between Courtney and Samuel Johnson. He corroborates Samuel Johnson as to the terms of the trade and says that after making the trade Courtney marked out the boundary. Nothing was said about excluding the minerals. When Johnson first went on the land, he commenced cutting timber about five hundred yards from where defendants were drilling. Simon Groop and Anderson Johnson testified that Courtney told them that he had sold the land to Johnson's wife. Mitchell Johnson, a son of Samuel Johnson, testified that he had heard Courtney say to Johnson that he could have the land for $2.75 an acre and the timber for $1.25 an acre or the land and timber straight for $4.00 an acre, and that Johnson said that he would take it all at $4.00 straight. In showing the boundary, Courtney used the map. Pryse McIntosh testified that the land claimed by plaintiff was enclosed by cliffs down to the Spencer fence line, but that Spencer's fence line and the cliffs did not make an enclosure.

It is not insisted that plaintiff showed any kind of title to the land in controversy, but claimed that plaintiff was entitled to recover by reason of her possession. It may be conceded that it is the law in this and many other jurisdictions that possession in the plaintiff is sufficient to maintain an action of trespass against one who hath no title. Wilson v. Bibb, 1 Dana 7, 25 Am. Dec. 118; North v. Cates, 2 Bibb 591; Crate v. Strong, 69 S. W. 957, 24 Ky. Law Rep. 710. It therefore becomes necessary to determine whether plaintiff's proof of possession was sufficient. Though plaintiff's husband claims that his wife was in possession and that she was put in possession by Courtney, yet when these statements are construed in the light of the facts constituting the possession, it is clear that all that Courtney did was to point out on the map the boundaries of the land in controversy and to sell it by oral agreement to plaintiff. At that time the land was not fenced, and though it be true that there was a fence around a portion of it and a ridge on the other side, the fence and the ridge did not make an enclosure, nor did they embrace all the land, for a portion of it extended beyond the ridge. Furthermore, there was no well marked boundary around the land. The land was not occupied or cultivated by plaintiff. All that she did on the land was occasionally to cut timber from different portions of it. It is well settled in this state that actual possession of land at the time of the trespass is necessary to enable a plaintiff without title to recover against a trespasser, and manifestly where the land is not enclosed or embraced within a well marked boundary, mere claim of ownership with occasional cutting and removing of timber from parts of the land not occupied by the defendant is not sufficient. Ohio & B. S. R. Co. v. Wooten, 46 S. W. 681; Shields v. Heard, 53 S. W. 820. It follows that defendants' motion for a peremptory instruction should have been sustained.

Judgment reversed and cause remanded for a new trial consistent with this opinion.